*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MONSHAUN DAEONDRAEL NORWOOD,

Defendant-Appellant.

UNPUBLISHED
April 14, 2025
9:42 AM

No. 366441
Macomb Circuit Court
LC No. 2022-001097-FH

Before: GARRETT, P.J., and K. F. KELLY and SWARTZLE, JJ.

PER CURIAM.

Defendant was convicted at trial of capturing/distributing the image of an unclothed person, MCL 750.539j(2)(b); using a computer to commit a crime, MCL 752.796; and eavesdropping-installing a device, MCL 750.539d(3)(a)(*i*). Defendant argues on appeal that defense counsel deprived him of the effective assistance of counsel. We affirm.

## I. BACKGROUND

Detective Jake Sidaway was investigating pornographic photographs being left at various apartment complexes. Defendant was identified as a suspect and arrested on an outstanding warrant. Detective Sidaway interviewed defendant about distribution of the photographs. Defendant reported being "high" during the interview and having used marijuana a couple hours earlier, but Detective Sidaway thought that defendant was communicating effectively and appeared to understand the detectives. Detective Sidaway gave defendant a form advising him of his *Miranda*[1] rights and went through each right, with defendant reading the rights aloud. Defendant indicated that he had been arrested before and was familiar with his rights, and he signed the form. The video of the interview shows that defendant spoke slowly and quietly throughout the interview, but was given time to consider the information on the form and individually initialed each right. Defendant was also given water.

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

During the interview, Detective Sidaway said that he knew that defendant was a registered sex offender, and it "would take [defendant] talking" for the detective not to contact the registry. Later, Detective Sidaway explained that he needed to report defendant's violation for distributing pornography because defendant was not being cooperative and remorseful. Toward the end of the interview, Detective Sidaway stated that he was going to obtain a search warrant for the contents of defendant's phone to look for photographs and asked for defendant's phone passcode. Detective Sidaway asked if defendant would consent to the search, which would demonstrate his cooperation, or the detective would get a search warrant. Defendant consented to the search, signed a consent form, identified his phone, and informed officers of the passcode. This first interview with defendant lasted approximately one hour and four minutes.

Detective Sidaway looked through defendant's phone and found nude photographs and videos. At that point, Detective Sidaway stopped his search and obtained a search warrant for the phone's contents, after which he located nude photographs and videos, including of the named victim in this case. The victim identified herself in the videos.

The next day, Detective Sidaway interviewed defendant again at the jail. Detective Sidaway went through the same protocol of informing defendant of his rights as he did the previous day, and defendant signed another form waiving his rights. Detective Sidaway asked defendant about the videos and photographs on his phone, and defendant denied that the videos of the victim were of her, and were, instead, videos of his ex-girlfriend.

After defendant was charged, defendant's first attorney moved for a *Walker*[2] hearing and to exclude defendant's interview statements. Defendant dismissed his attorney, and the hearing was never held. Defendant was appointed a second attorney.

During his opening statement at trial, defense counsel stated that the prosecutor could not prove that a computer was used for these offenses. Defense counsel also stated that "nobody on the planet is going to be able to tell you that they saw or they have evidence that [defendant] did these things," and somebody with access to the home could have committed these acts. On cross-examination, Detective Sidaway admitted that he did not see defendant take the videos or pictures, and defendant was not shown in the videos of the victim. The victim also testified during cross-examination that she did not have personal knowledge that defendant took the videos of her found on defendant's phone.

Defense counsel moved for a directed verdict, partially on the basis that there was no direct evidence identifying defendant as the culprit. The trial court denied the motion. Defense counsel argued in closing that there was no evidence that the images were recorded with defendant's phone and that the witnesses did not have personal knowledge of defendant taking the images. The jury found defendant guilty.

---

[2] *People v Walker*, 374 Mich 331; 132 NW2d 87 (1965).

During his sentencing hearing, defendant requested two changes to the presentence investigation report (PSIR), which the trial court made. Defendant did not make a statement before the trial court issued its sentence.

Defendant subsequently moved for a new trial or to correct an invalid sentence, arguing that defense counsel was ineffective. With his motion, defendant provided a social history prepared by a mitigation specialist. The trial court denied defendant's motion, finding that defense counsel presented the same legally valid defense that defendant was now raising and that defendant's statements during his interview were knowingly and intelligently given. The trial court stated that the PSIR contained information on several mitigating factors and that the trial court would not have imposed a "materially different sentence" if the additional information had been provided. Defendant now appeals.

## II. ANALYSIS

Defendant argues that defense counsel was ineffective. Defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. This right includes the right to the effective assistance of counsel. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). "Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). Because no evidentiary hearing has been held on this matter, we review for errors apparent on the record. See *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008).

To establish a claim of ineffective assistance of counsel, defendant must show that: (1) defense counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). Defense counsel's performance was deficient if it fell below an objective standard of professional reasonableness. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). A defendant bears a heavy burden to show that counsel made errors so serious that counsel was not performing as guaranteed by the Sixth Amendment, and "defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001), citing *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, the result of the proceeding would have been different. *Jordan*, 275 Mich App at 667. "The defendant has the burden of establishing the factual predicate of his ineffective assistance claim." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

First, defendant argues that defense counsel failed to present a legally valid defense because his theory consisted of the incorrect premise that a phone is not a computer. Defense counsel, however, raised the lack of direct evidence of defendant taking the photographs and videos in his opening statement, cross-examinations, motion for a directed verdict, and in closing. Defendant argues that defense counsel's argument about a lack of direct evidence "was an ancillary argument" to his theory about the phone not being a computer and that it was possible that defendant received the messages from someone else. Defense counsel, however, repeatedly addressed the lack of direct evidence, providing an objectively reasonable defense. Therefore, even if defense counsel's argument about the phone not constituting a computer was legally

invalid, defendant has not demonstrated that defense counsel's performance fell below an objective standard of reasonableness or that defendant was prejudiced. See *Jordan*, 275 Mich App at 667.

Next, defendant argues that trial counsel was ineffective for failing to challenge his statements made, and his consent to search his phone given, while he was under the influence of marijuana. "Statements of an accused made during custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waived his or her Fifth Amendment rights." *People v Gipson*, 287 Mich App 261, 264; 787 NW2d 126 (2010). "Whether a defendant's statement was knowing, intelligent, and voluntary is a question of law, which the court must determine under the totality of the circumstances." *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2004). Intoxication can affect the validity of a waiver of Fifth Amendment rights, although it is not dispositive. *Id*. To determine the voluntariness of a waiver, a court should consider, among other potential factors, the following:

> the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. [*People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988).]

Whether a statement was voluntary depends on police conduct, and whether it was knowingly and intelligently made partially depends on the defendant's capacity. *Tierney*, 266 Mich App at 707.

As to whether defendant's waivers were voluntarily made, defendant was an adult, with some previous experience with the police. See *Cipriano*, 431 Mich at 334. His first interview was just over an hour long, within a couple hours of arrest, and he was given water. See *id*. Defendant reported that he was high and had used marijuana a couple hours earlier. Although defendant spoke slowly and quietly throughout the interview, defendant did not appear unable to waive voluntarily his *Miranda* rights. Defendant went through each right and appeared to communicate adequately. Defendant argues that the detectives coerced him by accusing him of lying and threatening to report his violation to the sex-offender registry. By the time of these statements, however, defendant had already signed the form waiving his rights. Moreover, given the relatively short nature of the interview, defendant was not subjected to excessive interrogation. Although Detective Sidaway referred to reporting defendant for a violation of his registration, he did not threaten defendant with abuse. The totality of the circumstances indicates that defendant's statements in the first interview were voluntarily made. See *Tierney*, 266 Mich App at 707.

Defendant's statements in the first interview were also knowingly and intelligently made. "The mental state that is necessary to validly waive *Miranda* rights involves being cognizant at all times of the State's intention to use one's statements to secure a conviction and of the fact that one can stand mute and request a lawyer." *People v Daoud*, 462 Mich 621, 640-641; 614 NW2d 152

(2000) (cleaned up). Despite defendant's marijuana use, defendant appeared capable of understanding and agreeing to the waiver of his *Miranda* rights.

Defendant specifically challenges on appeal his statement identifying a video on his phone as being of his ex-girlfriend rather than of the victim, showing he knew that the images were on his phone. Defendant, however, made this statement in his second interview, which took place a day after he was arrested. Defendant has not demonstrated how officer's questioning the first day coerced defendant's statements on the second day, nor that defendant would be incapacitated by using marijuana the day before. Nor has defendant specifically raised any challenges about the conditions of the second interview. The record demonstrates that defendant waived his *Miranda* rights during the second interview, following the same protocol as in the first interview. Therefore, defendant's statements were voluntarily, knowingly, and intelligently made. Defense counsel cannot be faulted for raising a futile issue. See *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998). Moreover, even if failing to move to suppress the statements was objectively unreasonable, defendant has not demonstrated how the use of defendant's limited statements acknowledging the images prejudiced him. Accordingly, defense counsel's failure to pursue a *Walker* hearing did not constitute ineffective assistance of counsel.

Next, defendant argues that his consent to search his phone was involuntary, and this search resulted in officers finding the images of the victim. "The Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Rodriguez*, 327 Mich App 573, 583; 935 NW2d 51 (2019) (cleaned up). "Consent permits a warrantless search so long as it is unequivocal, specific, and freely and intelligently given." *Id*. at 584.

Detective Sidaway asked defendant for consent to search his phone, and defendant signed a consent form and provided the passcode. At that point, defendant had smoked marijuana at least two hours earlier. Nothing in the record indicates that defendant could not understand that he was consenting to a search of his phone. Although defendant argues that coercion by the detectives invalidated his consent, Detective Sidaway made comments about the sex-offender registry, but did not threaten defendant with violence. The totality of the circumstances demonstrates that defendant's consent to search was valid. See *id*. Moreover, once Detective Sidaway found photographs and videos on defendant's phone, he stopped the search and obtained a search warrant. Because officers first obtained valid consent to search and then a search warrant, a motion by trial counsel to exclude the videos would have been futile, and trial counsel was not ineffective.

Finally, defendant argues that trial counsel was ineffective for failing to investigate and present mitigating evidence at sentencing. Before sentencing, the trial court read defendant's PSIR and made changes to portions to which defendant objected. As defendant argues, the trial court was required to impose a sentence proportionate to the offense and the offender, see *People v Steanhouse*, 500 Mich 453, 474; 902 NW2d 327 (2017), but defendant fails to establish what information defense counsel could have provided that would have changed the outcome of defendant's sentence. Defendant presented the mitigation report with his motion for a new trial, and the trial court found that it would not have imposed a "materially different sentence" with the additional information. Therefore, even if defense counsel was objectively unreasonable by failing

to provide more information to the trial court before sentencing, defendant has not established that defense counsel's performance prejudiced him. See *Jordan*, 275 Mich App at 712.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Kirsten Frank Kelly
/s/ Brock A. Swartzle